UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HEALTH RESEARCHTX, LLC,

Plaintiff,

-v-

JANSSEN SCIENTIFIC AFFAIRS, LLC,

Defendant.

---

26cv4409 (DLC)

OPINION AND ORDER

APPEARANCES:

For plaintiff Health ResearchTx, LLC:

Lawrence Howard Pockers
Deanna Jean Lucci
Jillian Marie Dreusike
Seth Harrison Dawicki
Duane Morris LLP
22 Vanderbilt, 23rd Floor
New York, NY 10017

For defendant Janssen Scientific Affairs, LLC:

Andrew Darion Cohen
Eric Beinhorn
Erika K. Birk
Michael F. Buchanan
Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

DENISE COTE, District Judge:

Plaintiff Health ResearchTx, LLC ("HRTx") agreed to conduct a long-term pharmaceutical safety study for Janssen Scientific Affairs, LLC's ("Janssen"). In this lawsuit, HRTx seeks payment for work it performed before Janssen terminated their contract

and all of the payments it would have received had the contract been successfully completed. Janssen moves to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., and to strike certain allegations from the complaint pursuant to Rule 12(f), Fed. R. Civ. P. For the following reasons, Janssen's motion is granted in part.

## Background

The following facts are taken from the complaint and the exhibits attached thereto. For the purposes of this motion, the complaint's allegations are taken as true, and all reasonable inferences are drawn in plaintiff's favor.

Janssen is a pharmaceutical company that develops and markets prescription therapies. In 2016 and again in 2019, Janssen obtained approval from the Food and Drug Administration ("FDA") for one of its products (the "Drug") to treat various medical conditions. In connection with these FDA approvals, Jannsen committed to conducting a post-marketing, real-world observational study to confirm the long-term safety of the Drug (the "Study").

Janssen retained HRTx to conduct the Study. HRTx is a research and consulting company that conducts healthcare research for pharmaceutical companies and other organizations using electronic health record data maintained by the Department

of Defense ("DOD"). On December 16, 2019, the parties executed an Observational Retrospective Study Agreement (the "Agreement").

The Study's objective was to determine whether the Drug leads to more malignancies and opportunistic infections than other approved medications for the conditions. The Study was to proceed in three phases through at least 2030 and to include recurring reports to Janssen, and interim and final reports to the FDA. Exhibit B to the Agreement provided for a deliverables/milestone-based payment schedule, pursuant to which HRTx was to charge Janssen fees for deliverables according to itemized prices. The fees become due "upon delivery and acceptance by [Janssen] of deliverables or upon completion of milestones." The Agreement provided that, "the fees set forth in Exhibit B [were] intended to cover all HRTx activities necessary to conduct, manage and oversee the Study" and, unless otherwise provided, "no statement or conduct of the Parties shall entitle HRTx to any type of equitable adjustment." Moreover, Janssen was "not responsible for any additional fee for any change unless it results in a . . . material increase in HRTx efforts or costs . . . and has been mutually agreed upon by the Parties in writing."

The Agreement could not be amended "except by written document signed by all parties hereto." Pursuant to this provision, the parties executed Amendment #1 to the Study Agreement on August 10, 2020, which expanded the scope of the Study and increased the overall budget.

Janssen had the right to terminate the Agreement "(a) at any time in the exercise of its sole discretion upon fifteen (15) days prior written notice to HRTx . . . or (c) upon material breach of the Agreement by HRTx." In the event that Janssen chose to terminate early for any reason other than a breach by HRTx, HRTx's right to additional compensation depended on whether the FDA "accepted" Janssen's "post-marketing requirement obligation."[1] HRTx could only terminate for an uncured material breach or at the direction of the DOD.

HRTx timely completed the Agreement's Phase 1 deliverables by the end of 2020 and was paid the entire amount due under the Agreement for that period. Phase 2 was the reports-driven phase, scheduled to last from 2021 through 2030.

[1] If the FDA had not "accepted" that obligation, then Janssen would owe HRTx a termination fee of $3 million, in addition to all completed milestones, with the "total cost [to] never exceed the overall total cost of [the] contract." In the event that Janssen's post-marketing requirement obligation was accepted by the FDA, Janssen would owe HRTx for all milestones contemplated by Exhibit B, which would all be deemed to be met by virtue of the FDA's acceptance.

In early 2021, however, Janssen requested that HRTx perform supplemental Phase 1 work, citing external changes in the regulatory landscape that required HRTx to redo deliverables that had already been finalized. Also, in June 2021, Janssen requested that HRTx push back its delivery of its Q3 2021 report. Accordingly, throughout 2021 and 2022, HRTx conducted supplemental Phase 1 activities in parallel with Phase 2 activities. To compensate HRTx for completing this additional work, Janssen directed HRTx to add 20% to its invoices starting in 2022. HRTx issued invoices with the agreed-upon 20% increase -- adding approximately $600,000 to Janssen's expected payments -- which Janssen paid without objection. Janssen declined to execute a written amendment to the Agreement to reflect the schedule and payment changes, however, citing the company's painstakingly slow contract amendment process.

In early 2023, HRTx shared its preliminary Study findings with Janssen. HRTx identified a significant number of potential cancer events, resulting in a higher patient malignancy rate than Janssen had anticipated. After HRTx shared those findings, Janssen's procurement team abruptly refused to pay HRTx for its Q1 2023 work, amounting to approximately $2.65 million.

As of October 2023, Janssen still owed HRTx $2.65 million for its Q1 2023 Study work, as well as the additional amounts

that had accrued for HRTx's Study activities in Q2 and Q3 2023. Nonetheless, HRTx delivered the first full "Janssen Report" -- originally scheduled for Q3 2021 -- in October 2023. This report revealed an even higher number of instances of potential malignancies in the Study patient population.

At a meeting held on February 13, 2024, Janssen expressed concern -- for the first time -- about the Study's progress and timeline. Ten days later, on February 23, Janssen informed HRTx of its intent to terminate the Agreement. Janssen nevertheless asked HRTx to prepare the Q1 2024 report by March 31.

On February 26, Janssen issued its formal termination notice to HRTx, effective March 30. The notice stated that the termination was for HRTx's material breach.

In a letter of February 27, HRTx disputed that it was in material breach of the Agreement and requested clarification. The letter also informed Janssen that HRTx had completed six (6) Q1 2024 deliverables, amounting to $2,796,928 under the Agreement.

On March 1, Janssen outlined multiple instances of material breach by HRTx, including HRTx's failure to provide required Study information in advance of meetings, and HRTx's invoicing for deliverables not yet completed and for amounts above what is provided by Exhibit B to the Agreement. Janssen's letter

specifically mentions the additional $600,000 billed by HRTx throughout 2022, as well as the 20% increase that HRTx added to invoices in 2023. Janssen disputed that it was obligated to pay $2,796,928 for 2024 deliverables, as the only 2024 deliverable that Janssen had received was HRTx's participation in a single meeting.

HRTx delivered the Q1 2024 Report on March 29, as Janssen requested. HRTx was ultimately paid $16 million of the Agreement's total budget of approximately $35 million. The payment was approximately $600,000 more than what was explicitly authorized by the Agreement through 2023.

HRTx filed the complaint in this action on May 27, 2026, asserting two claims against Janssen -- breach of the Agreement (Count I), and breach of the implied covenant of good faith and fair dealing (Count II). On June 23, Janssen filed its motion to dismiss the complaint and to strike certain allegations contained therein. Janssen's motion became fully submitted on July 28.

## Discussion

I. Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

for relief that is plausible on its face." Doe v. Franklin Sq. Free Sch. Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678). The court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Iqbal, 556 U.S. 678).

A. Breach of Contract

Pursuant to the Agreement's choice-of-law provision, the claims are governed by New Jersey law. To state a breach of contract claim under New Jersey law, a plaintiff must allege that: (1) the parties "entered into a contract," (2) plaintiff "did what the contract required" of it, (3) the defendant "did not do what the contract required" of it; and (4) the defendant's breach "caused a loss" to the plaintiff. Goldfarb v. Solimine, 245 A.3d 570, 577 (N.J. 2021) (citation omitted).

When a contract's language "is plain and capable of legal construction, the language alone must determine the agreement's force and effect." Manahawkin Convalescent v. O'Neill, 85 A.3d 947, 958-59 (N.J. 2014) (citation omitted). A contract's terms can be modified, however, either by explicit agreement to modify or "by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." County of Morris v. Fauver, 707 A.2d 958, 967 (N.J. 1998).

Where, like here, a contract requires modifications to be in writing, "the writing requirement may be expressly or impliedly waived by the clear conduct or agreement of the parties." Home Owners Const. Co. v. Borough of Glen Rock, 169 A.2d 129, 135 (N.J. 1961). The intent to waive need not be stated expressly, provided that "the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Cole v. Jersey City Med. Ctr., 72 A.3d 224, 231 (N.J. 2013) (citation omitted). "Determining whether a party waived a right is a fact-intensive analysis." Id.

HRTx alleges that Janssen breached the Agreement -- as modified by the parties -- by terminating for material breach when HRTx was not in breach, failing to pay HRTx for work it completed, and failing to pay HRTx for work that it would have

completed over the remaining duration of the study.[2] According to the complaint, beginning in 2021, Janssen requested -- and HRTx agreed -- to modify the Study's timeline and fee structure. HRTx performed the expanded work and invoiced Janssen pursuant to these modifications, which Janssen paid without comment through 2022. Consequently, Janssen paid HRTx approximately $600,000 more than the Agreement originally contemplated for its work in 2022.

Beginning in 2023, however, Janssen stopped paying HRTx's invoices. Janssen then terminated the Agreement in early 2024 for material breach, citing HRTx's failure to provide timely Study updates and improper billing practices. At Janssen's request, HRTx delivered its final report on March 29, 2024. Janssen did not pay HRTx for its additional work in 2023, nor the work HRTx completed in 2024.

Based on these allegations, HRTx has stated a claim for breach of contract based on Janssen's failure to pay HRTx for work that HRTx completed in 2023, as well as for any "milestones" HRTx achieved in 2024 before Janssen terminated the

[2] The complaint also states, without explanation, that "[u]pon information and belief, Janssen has breached other provisions of the Study Agreement, including but not limited to provisions relating to confidentiality and non-disclosure of information belonging to HRTx." Such "conclusory allegations," however, are insufficient to state a claim. Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006).

Agreement. HRTx has not stated a claim, however, for "the full benefit of its bargain" under the Agreement, which HRTx estimates entitles it to a further payment of approximately $19 million.

The complaint plausibly alleges that the parties modified the requirements and payment terms of their Agreement and that Janssen waived the requirement that those modifications be in writing. Accordingly, the complaint pleads that Janssen breached the agreement, as modified by the parties, and owes HRTx for work it performed in 2023.

Janssen argues that it owes HRTx nothing further because HRTx has already received more than the Agreement originally contemplated through 2023. But that argument assumes the original fee schedule remained controlling. As already explained, HRTx has plausibly alleged that, at Janssen's request, the parties agreed to increase HRTx's invoices by 20% in exchange for additional work. Accepting those allegations as true, the fact that HRTx received more than the Agreement originally contemplated does not establish that HRTx was fully compensated for work performed in 2023 under the Agreement as modified.

HRTx has also stated a claim for payment for any "milestones" completed in 2024. Under the Agreement, HRTx could

invoice Janssen "upon delivery and acceptance by [Janssen] of deliverables or upon completion of milestones," as outlined in the "Study Milestone & Deliverable Payment Schedule." For the year 2024, that Schedule included the Janssen reports, which HRTx was required to deliver "quarterly," as well as a list of "sub-deliverables" related to those reports.[3] In a letter of March 8, 2024, which is attached as an exhibit to the complaint, HRTx informed Janssen that it had "achieved fourteen (14) 2024 milestones totaling $4,094,274 per the Agreement." The complaint further alleges that HRTx delivered its final Janssen report on March 29, 2024. HRTx was not paid for any 2024 work.

The complaint does not allege that Janssen "accepted" any of Janssen's deliverables as required under the Agreement to trigger Janssen's obligation to pay. Consequently, HRTx failed to state a claim for unpaid "deliverables" in 2024. The "completion of milestones," however, also triggers an obligation to pay under the Agreement. Drawing all inferences in favor of HRTx, HRTx's representation that it "achieved" certain milestones in 2024 prior to the termination of the Agreement is sufficient to state a claim based on Janssen's failure to pay for that work.

[3] The Janssen reports are listed under the header, "Deliverable/Milestone." Neither "deliverable" nor "milestone" is defined in the Agreement.

HRTx argues that milestones and deliverables are used interchangeably throughout the Agreement, and therefore HRTx is entitled to payment for all work completed in 2024. But Janssen negotiated an acceptance right as to deliverables, and not as to milestones, confirming that the two terms refer to different work. To hold otherwise would read Janssen's acceptance rights out of the Agreement. Determining the precise meaning of the term "milestone" in this context, and to which of HRTx's activities it refers, however, may require consideration of extrinsic evidence that is not properly considered on a motion to dismiss. See Conway v. 287 Corp. Ctr. Assocs., 901 A.2d 341, 347 (N.J. 2006) (allowing a "thorough examination of extrinsic evidence in the interpretation of contracts," including consideration of "custom" and "usage").

Lastly, HRTx has not stated a claim for payment for the "work that HRTx would have completed over the remaining duration of the Study" in the amount of $19 million less avoided costs. Under § 21.2 of the Agreement, HRTx expressly waived "ANY CLAIM TO . . . LOST PROFITS/REVENUES DAMAGES." The $19 million that HRTx seeks represents the amount it expected to receive for future work, less the costs it avoided by not performing that work -- in substance, the profit HRTx expected to earn from

future performance. Such a claim for lost profits is expressly foreclosed by the Agreement.

HRTx attempts to circumvent the parties' express waiver by labeling that amount expectation damages -- the "traditional remedy for breach of contract" -- rather than lost profits. Goldfarb, 245 A.3d at 577. But that characterization does not save the claim.

Expectation damages compensate an injured party for the "loss of the benefit of the bargain," and seek "to put the injured party in as good a position as if performance had been rendered." Id. (citation omitted). Here, the benefit of HRTx's bargain did not include a right to perform the Study through its anticipated completion date. To the contrary, the Agreement permitted Janssen to terminate for breach or "at any time in the exercise of its sole discretion" upon fifteen days' notice. The Agreement then described the compensation due HRTX in the event Janssen exercised its discretionary right to terminate the Agreement. That compensation was dependent on whether the FDA had or had not "accepted" Janssen's "post-marketing requirement obligation." Since the FDA had not "accepted" Janssen's obligation, HRTx's recovery is limited by the Agreement to $3 million plus payment for "all completed milestones," as provided in Exhibit B. Therefore, awarding HRTx an amount of $19 million

as expectation damages would put HRTx in a better position than if Janssen had exercised its termination rights in accordance with the Agreement. Accordingly, HRTx has not stated a claim for the value of the work HRTx would have completed over the remaining duration of the Study.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

In New Jersey, every party to a contract "is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 395 (N.J. 2005); see also Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (N.J. 1997) (holding same for contract granting party unilateral right of termination). Pursuant to that covenant, neither party may do "anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." Comprehensive Neurosurgical, P.C. v. Valley Hosp., 312 A.3d 243, 261 (N.J. 2024) (citation omitted). To state a claim for breach of the implied covenant, plaintiff must allege that defendant acted with "bad motive or intention." Brunswick Hills Racquet Club, Inc., 864 A.2d at 396 (citation omitted).

The implied covenant of good faith and fair dealing "cannot override an express term in a contract." Wade v. Kessler Inst.,

798 A.2d 1251, 1259 (N.J. 2002) (citation omitted). Generally, when a party's "contractual right to terminate is express and unambiguous, the motive of the terminating party is irrelevant." Sons of Thunder, Inc., 690 A.2d at 588. That party's "performance during the contractual period, including the conduct surrounding the termination of the contract," however, can form the basis for a breach of the implied covenant of good faith and fair dealing. Id. at 589. Any bad-faith conduct must "differ[] from a 'literal violation of a contract.'" Wade, 798 A.2d at 1259 (citation omitted).

Here, HRTx alleges that "Janssen's early termination was in bad faith," as demonstrated by Janssen's manufacturing pretextual grounds for termination, conducting the February 2024 meeting under false pretenses, and directing HRTx to perform work without intending to pay for it. By engaging in such bad-faith conduct, Janssen allegedly "interfer[ed] with HRTx's rights to receive its bargained-for benefits under the Study Agreement."

To the extent that this claim seeks the same lost profits described above, it is dismissed for the reasons already provided. To the extent this claim seeks relief for Janssen's pre-termination conduct -- namely, fabricating HRTx's breach and refusing to pay for work performed -- it concerns the same

actions that form the basis of the breach of contract claim and gives rise to the same potential damages. Where the "two asserted breaches basically rest on the same conduct," there "can be no separate breach of an implied covenant of good faith and fair dealing." Wade, 798 A.2d at 1262-63. Accordingly, Count II is dismissed.

II. Motion to Strike

Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions to strike are generally disfavored, especially when they are brought "on the grounds of immateriality." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 894 (2d Cir. 1976); id. at 893 ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing."). The Second Circuit has clarified, however, that while "motions to strike material solely 'on the ground that the matter is impertinent and immaterial' are disfavored, when material is also 'scandalous,' no such presumption applies." Brown v. Maxwell, 929 F.3d 41, 51 n.42 (2d Cir. 2019) (citation omitted).

Janssen moves to strike the allegations in the complaint suggesting that Janssen terminated the Agreement because of HRTx's malignancy findings, arguing that the allegations are

irrelevant to HRTx's claims under the Agreement. Janssen also argues that defending against the allegations needlessly expands the scope of what is otherwise a straightforward contract case.

From HRTx's perspective, however, the allegations are relevant to describing the parties' relationship and the circumstances surrounding Janssen's decision to terminate their Agreement, which is the event that precipitated this litigation. The fact that Janssen has a competing narrative of this event does not needlessly expand the scope of the dispute. Janssen has failed to provide a "strong reason" for tampering with the pleadings, Lipsky, 551 F.2d at 893, and its motion to strike is therefore denied.

III. Plaintiff's Request to Amend

HRTx requests that, to the extent Janssen's motion to dismiss is granted, HRTx should be permitted to amend its complaint. In general, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Miller v. United States ex rel. Miller, 110 F.4th 533, 550 (2d Cir. 2024) (citation omitted). Additionally, leave to amend need not be given if a plaintiff "fails to specify how amendment would cure the pleading

deficiencies in its complaint." Id. at 550-51 (citation omitted).

HRTx's request for leave to amend is denied. An Order of June 24, 2026 gave HRTx the opportunity to amend its complaint in response to Janssen's motion to dismiss and cautioned HRTx that it was unlikely to have a further opportunity to amend. HRTx chose not to amend its complaint, and to oppose the motion instead. Moreover, HRTx has not attached a proposed amended complaint or otherwise described how it would cure any defect in its complaint. Although HRTx argues that it "could not have anticipated" Janssen's invocation of the Agreement's discretionary termination provision, that argument makes no sense. HRTx was given leave to amend after Janssen had made the argument in its motion to dismiss, and HRTx elected not to amend.

## Conclusion

Janssen's June 23, 2026 motion to dismiss Count I is granted as to HRTx's claims for payment for 2024 "deliverables" and the value of the "work that HRTx would have completed over the remaining duration of the Study," and as to Count II.

Janssen's motion to strike of the same date is denied. HRTx's request to amend the complaint is also denied.

Dated: New York, New York
September 16, 2026

DENISE COTE
United States District Judge